IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARREN L. WANAMAKER,                           :
          Plaintiff                            :
      v.                                           : Case No. 3:17-cv-133-KAP
PENNSYLVANIA DEPARTMENT OF        :
 CORRECTIONS, *et al.*,                        :
          Defendants                          :

Memorandum Order

An action for damages for imprisonment beyond the term of a sentence has been a recognized cause of action in this circuit at least since Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir.1989), and Moore v. Tartler, 986 F.2d 682, 686 (3d Cir.1993). The relevant law is the Eighth Amendment's requirement that prison officials not be deliberately indifferent to the risk of an unjustified deprivation of a person's liberty. Sample v. Diecks, *supra*, 885 F.2d at 1110. As the Court of Appeals explained:

> To establish § 1983 liability in this context, a plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

Plaintiff Wanamaker contends that several employees of the Department of Corrections are liable to him for failing to correct an error in his sentence computation and thereby causing him to spend approximately five months in custody beyond the expiration of his sentence.

Before getting to the meat of the case I dismiss Count 4, which claims that defendants conspired to unlawfully confine Wanamaker due to racial animus. Second Amended Complaint, ¶106. No alleged fact supports this assertion. Allegations of official action "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," are precisely what the Supreme Court described as inadequate "formulaic recitation" of the elements of a claim in Ashcroft v. Iqbal, 556 U.S. 662, 680-81 (2009). The conclusory nature of the allegation disentitles it to the presumption of truth. *Id.* Defendants go on to argue that Wanamaker fails to state a claim because their decisions were correct, but the claim fails at the outset under Iqbal.

Wanamaker was sentenced on September 4, 2007 by Judge Osborne of the

Delaware County Court of Common Pleas to an aggregate 3-23 month term of imprisonment for unauthorized use of a motor vehicle and driving under the influence. Commonwealth v. Wanamaker, CP-23-CR-777-2007. Wanamaker served 108 days of this sentence and was released on parole. While on parole, Wanamaker committed crimes in Philadelphia, was arrested on April 20, 2010, and was charged, *inter alia*, at Commonwealth v. Wanamaker, CP-51-CR-5754-2010. On December 3, 2012, Wanamaker was sentenced in CP-51-CR-5754-2010 to 2½-5 years imprisonment followed by 5 years of probation for criminal trespass, with a concurrent 2-year term of probation for criminal mischief. Wanamaker's new offense was a violation of his Delaware County parole, and he was resentenced at case no. 777 of 2007 on March 28, 2013 by Judge Pagano of the Delaware County Court of Common Pleas to "full Back time 592 days immediate parole." This entry, on a form titled "Delaware County Court of Common Pleas Certificate of Imposition of Judgement of Sentence," noted that it was a "Gagnon II" proceeding (i.e. one for a parole violation) and it was accompanied by the entry "This case consecutive to Phila Case #5754-10" and notes that there were post-release conditions that Wanamaker report to the county parole department, take safe driving classes, and perform community service. According to the exhibits to the Second Amended Complaint and according to the District Attorney of Delaware County in the habeas matter discussed below, this sentence formally imposed a sentence determined at the Gagnon I hearing on November 14, 2008 by a hearing officer Gregg Parker, Esquire. *See* Exhibit B to the Second Amended Complaint. At the Gagnon II hearing before Judge Pagano, he orally ordered something slightly different from what was in the written form: he orally sentenced Wanamaker to "his full back time of 592 days with immediate parole, consecutive to his minimum state sentence for Philadelphia 5754-10." Gagnon II Transcript at 25. The transcript is part of ECF no. 17 in the habeas matter. I take judicial notice of this court's own records in cases to which Wanamaker has been a party and the authenticity of which is not challenged.

Wanamaker filed a petition for a writ of habeas corpus in January 2015 in the Middle District of Pennsylvania that was transferred to this court at Wanamaker v. Department of Corrections, Case no. 3:15-cv-15-KRG-CRE (W.D.Pa.). Wanamaker, housed at S.C.I. Somerset, attached the Department of Corrections sentence computation form, "Form DC16E -Sentence Status Summary" which reflected that by June 2013 the DOC had added the Delaware County parole revocation sentence (592 days) to the Philadelphia sentence, resulting in a parole eligibility date of October 2, 2010 and a maximum sentence date of December 2, 2016, based on Wanamaker the five years of the Philadelphia sentence from April 2010 to April 2015. Wanamaker claimed that the DOC had improperly turned his 592-day sentence into a 3-23 month sentence. The respondent moved to dismiss on the grounds, *inter alia*, that Wanamaker had not exhausted his state court remedies by using at least one available remedy, a petition for a writ of habeas corpus to the sentencing court (Judge Pagano). Wanamaker pursued this path: he filed a

Motion for Credit for Time Served (also referred to in places as a Petition for Writ [of] Habeas Corpus) in <u>Commonwealth v. Wanamaker</u>, CP-23-CR-777-2007, on August 14, 2015. Magistrate Judge Eddy stayed the habeas petition in September 2015, then dismissed it as moot in January 2016 because Judge Pagano vacated his sentencing order on September 24, 2015, and Wanamaker was released from custody on September 26, 2015. Wanamaker had attempted to morph his stayed habeas petition into a complaint for damages, but Magistrate Judge Eddy rejected that attempt.

Wanamaker filed three civil complaints for damages at <u>Wanamaker v. Department of Corrections</u>, Case no. 3:15-cv-171-KRG-KAP (W.D.Pa.), <u>Wanamaker v. Department of Corrections</u>, Case no. 3:15-cv-283-KRG-KAP (W.D.Pa.), and this case, <u>Wanamaker v. Department of Corrections</u>, Case no. 3:17-cv-133-KAP (W.D.Pa.). The complaint at Case no. 3:15-cv-171 was filed in the Eastern District of Pennsylvania and transferred here: in June 2015 I recommended that it be dismissed under the rule in <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), because at that point Wanamaker's claim had not accrued. Judge Gibson agreed and dismissed the complaint in September 2015, only days before Wanamaker was released.  The following month Wanamaker filed the complaint at Case no. 3:15-cv-283 in the Eastern District of Pennsylvania, which again transferred the matter here: in November 2015 I recommended that it be dismissed with leave to amend to allege a claim of deliberate indifference. Wanamaker filed an amended complaint, but did not follow through on providing directions for service, and in October 2016 I recommended that the complaint be dismissed for lack of prosecution. Without objection, Judge Gibson dismissed the complaint without prejudice in late October 2016.  The following month, Wanamaker sent correspondence titled "Notice of Apprisal" advising that he had been homeless, had just received "Order," and "wishes to proceed for he is destitute and without home." He closed with "please respond."

In June 2017, Wanamaker filed a third complaint in the Eastern District of Pennsylvania, and it was transferred here as the instant case.  I screened the complaint and recommended it be dismissed with leave to amend. ECF no. 7. Before the objections were ruled on, Wanamaker filed an amended complaint in August 2018, which I screened and found adequate to state a claim as to one defendant, Bloom. I ordered service on Bloom pending a ruling on the adequacy of the complaint as to rest of the defendants. Service on Bloom was protracted because Wanamaker had her first name wrong and because of the government shutdown. Wanamaker was also imprisoned on a probation violation of his Philadelphia sentence for some of this time.  Finally, in February 2020 Wanamaker moved for and was granted appointment of counsel, who appeared by early 2021. After time to familiarize themselves with the matter, counsel filed a second amended complaint, ECF no. 34, that was served on all defendants by early this year. The defendants' motion to dismiss followed, and the matter has been briefed. Both sides filed consents to my jurisdiction in 2021 or 2022, making any further action on my

recommendation from July 2017 unnecessary.

To state a claim against any defendant, Fed.R.Civ.P. 8(a) requires a plaintiff to set out a short and plain statement containing sufficient factual matter that if accepted as true would state a legal claim that is plausible on its face. *See* Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In the Supreme Court's words, plaintiff must allege enough facts in the complaint to "nudge" a claim "across the line from conceivable to plausible." *Id.,* 556 U.S. at 683, *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

Whether a complaint is screened *sua sponte* under the Prison Litigation Reform Act or, as here, the defendants have filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), the courts use the same standard. *See* Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir.2000). This standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) This requires allegation of each defendant's personal involvement, either by describing the defendant's participation in the wrongful conduct or the defendant's actual knowledge of and acquiescence in the alleged wrongful conduct. *See* Chavarriaga v. New Jersey Department of Corrections, 806 F.3d 210, 222 (3d Cir. 2015).

The first point to consider is that to state a claim Wanamaker must allege facts that if proved would establish not only that the defendants erred in computing his sentence, but they were also deliberately indifferent to that error. Even making an error of law that is subsequently deemed to be "unreasonable" is not enough to be considered deliberate indifference. Campbell v. Florian, 972 F.3d 385, 397 (4th Cir. 2020). Rejecting a claim that a Department of Corrections' attorney's interpretation of South Carolina law that lengthened Campbell's time in prison was deliberately indifferent to Campbell's right to liberty because the interpretation was later overturned in court, the Fourth Circuit wrote:

> An incorrect legal opinion often occurs without some negligent (much less reckless) act or omission. In our adversarial legal system, roughly 50% of litigants lose—and thus have pressed an incorrect legal opinion. Competent administrative agencies and lower courts are often overturned despite careful and thoughtful legal interpretations. Indeed, the South Carolina Administrative Law Court (an independent body) first upheld Florian's reading of the Omnibus Act. And even at the highest levels of the law, four colleagues at times share an "incorrect" or "unreasonable" opinion. *See* Brett M. Kavanaugh, *Fixing Statutory Interpretation*, 129 HARV. L. REV. 2118, n.4 (2016) (listing recent "divides in statutory interpretation cases"). An unreasonable outcome in that context cannot support an inference that the dissenters were negligent or criminally reckless in their analysis.

*Id.*, 972 F.3d 385, 397.

A second point is that government officials are shielded by qualified immunity from liability for money damages when their conduct does not violate clearly established legal rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). If official defendants "reasonably but mistakenly conclude[]" that their conduct conformed to the law they are entitled to immunity. Hunter v. Bryant, 502 U.S. 224, 227 (1991) (*per curiam*). To be liable an official must have "fair warning" that "specific acts were unconstitutional." Taylor v. Riojas, 141 S. Ct. 52, 53, 208 L. Ed. 2d 164 (2020)(*per curiam*).

Defendants make five arguments in support of dismissal. They first assert that the relevant two year statute of limitations ran before the filing of the complaint. This is incorrect. Under Heck v. Humphrey, Wanamaker's claim accrued not when he claimed that his confinement was wrongful, but when his release was obtained. One can quibble whether that was the date of Judge Pagano's order or the day he walked out of prison, but both dates were in September 2015, Wanamaker's complaint was filed in June 2017, and Wanamaker filed no earlier complaints that were dismissed on the merits.

Defendants next assert that there is no claim against the Department of Corrections. That is correct. A state is not a person that can be sued for a violation of civil rights under Section 1983, Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989), and barring waiver or valid Congressional abrogation of immunity under the Eleventh Amendment, states, state agencies, and individuals sued in their official capacities are immune from suit for damages in federal court. *See* Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

Third, defendants assert there is no due process claim due to the more specific provision rule.  In part, they are correct.  Wanamaker's claim arises under a specific guarantee of the Eighth Amendment, and where there is a textual source of protection against governmental conduct in the Constitution, there is no duplicate claim under a "substantive due process" theory. *See* DeLade v. Cargan, 972 F.3d 207, 210 (3d Cir. 2020); Graham v. Connor, 490 U.S. 386, 395 (1989). Plaintiff's counsel correctly note that **procedural** due process claims are not subject to the more specific provision rule. However, Wanamaker does not plead a viable procedural due process claim. What counsel refer to as defendants'  failure to investigate and address Wanamaker's complaints about his sentence computation, Brief at 6, are elements of the established Eighth Amendment claim and not  a duplicate procedural due process claim.

Mathews v. Eldridge, 424 U.S. 319, 335 (1976) and its progeny hold that the existence of a procedural due process claim requires consideration of 1) the private interest that will be affected by the official action; 2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and 3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or

substitute procedural requirement would entail. Assuming for the moment that the defendants' were wrong in their computation of Wanamaker's sentence, Wanamaker's experience- he obtained relief in approximately a month after bringing his plight to Judge Pagano's attention- makes it clear that there is a speedy remedy already in existence, in addition to the action in the Commonwealth Court for a writ of mandamus that I have previously discussed and that Magistrate Judge Eddy discussed in the habeas matter. If some further remedy were called for, its novelty alone would provide the defendants with the defense of qualified immunity to a damages suit. But the chief obstacle to a procedural due process claim is that Wanamaker's problem was with the substance of the defendants' computation, not the procedure used to reach it. That procedure was simple: look at the sentence, discard the part that was not valid under state law, and follow the result. Wanamaker is aggrieved by the fact that the Department of Corrections did not follow Judge Pagano's probable intent, but he does not allege that there is any process, extant or hypothetical, that would plausibly improve the sentence computation process. As the Fourth Circuit discussed in <u>Campbell v. Florian</u>, to argue that deliberate indifference exists because something "more" could have been done must "give us pause." *Id.*, 972 F.3d at 398. The same applies to a due process claim. Suppose every one of the thousands (and probably tens of thousands) sentence computations performed each year by the Department of Corrections became an adversarial proceeding, would the addition of an unrepresented inmate to the process add any expertise? Do we require counsel? Counsel is already involved in the sentencing process, and if there is an ambiguity that might lead to problems in sentence computation a defendant is guaranteed effective assistance of counsel in the sentencing court and in the direct appeal. And as this case illustrates, the Department of Corrections does not keep its sentence computation secret, so Wanamaker had at least two pre-deprivation remedies: the motion he eventually filed with Judge Pagano and an action in mandamus in the Commonwealth Court.

Fourth, defendants argue that on the pleadings, their computation of Wanamaker's sentence was correct. If their construction of Pennsylvania law is correct, they could not be deliberately indifferent even if Judge Pagano later indicated what he really meant by vacating Wanamaker's sentence, because up to that day in September 2015, Wanamaker's sentence was what Judge Pagano did impose in March 2013, not what he meant to impose. The same problem arises in federal sentencing: a district judge sentences a federal defendant to a federal sentence, after which a Common Pleas judge sentences the defendant to a concurrent state sentence. When that defendant comes into federal custody, regardless of the state court judge's intent that the two sentences will be concurrent, that intended sentence will certainly not be binding on the Bureau of Prisons. <u>Galloway v. Warden of F.C.I. Ft. Dix</u>, 385 Fed.Appx. 59, 63 (3d Cir. 2010). The inmate cannot change that by suing the prison officials.

Pennsylvania law is analogous.  Under Pennsylvania law, sentences up to two years

imprisonment are "county sentences" served in county prison, and control over parole decisions rests with the Court of Common Pleas. Sentences beyond two years are "state sentences." For sentences between two and five years, the defendant may be housed either at a county prison or a Department of Corrections prison; for sentences greater than five years the defendant must be housed in a DOC facility. 42 Pa.C.S.A.§ 9762. Control over parole for all state sentences rests with the Pennsylvania Parole Board, formerly the Pennsylvania Board of Probation and Parole. For state sentences, the Department of Corrections computes the defendant's aggregate sentence and custody credit to determine when the defendant is eligible to be considered for parole. Consecutive sentences are aggregated. If an aggregate sentence is a state sentence the Parole Board and not the Common Pleas Court makes the decision to parole. Commonwealth v. Tilghman, 673 A.2d 898 (Pa.1996). Judge Pagano's direction that Wanamaker be immediately paroled was a legal nullity.

It is clear from the Gagnon II hearing that Judge Pagano was grasping for some way to give Wanamaker an incentive to take some rehabilitative program while in custody that would make him eligible for parole. He literally said: "someone help me out here so I can put the correct sentence on there." Gagnon II Transcript at 25. Judge Pagano's use of the word "minimum" in his oral sentence does not appear to have made it onto the written form. According to Melissa Myers, who averred in the habeas proceeding that she computed Wanamaker's sentence, see ECF 27-1 in the habeas matter, that did not make any difference because once the word "consecutive" was used, the DOC aggregates the sentences, and if the aggregate maximum is over two years the judge has no control over parole. Wanamaker has argued for the last seven years that Judge Pagano's words "immediate parole" meant that he should have done no additional time for the Delaware County Parole violation and should have been released when he served the Philadelphia sentence in full. Having read the Gagnon II transcript, I seriously doubt Judge Pagano intended that. But what is legally certain for purposes of a motion to dismiss is that if Judge Pagano intended that, he did not do it properly. He could not both sentence Wanamaker to a consecutive sentence and retain control over Wanamaker's parole eligibility. When confronted with that fact in September 2015, Judge Pagano opted for eliminating the sentence he imposed in March 2013. But the defendants are not and were not deliberately indifferent to Wanamaker's rights, because their interpretation of Judge Pagano's March 2013 sentence was correct under Pennsylvania law.

Sample v. Diecks has been limited to those cases where prison officials substantially refused to investigate a credible claim of sentence expiration or miscalculation. That did not happen here: prison officials interpreted Judge Pagano's sentence, and did so correctly. But if the defendants had interpreted Judge Pagano's sentence incorrectly, Moore v. Tartler and Campbell v. Florian illustrate that the Eighth Amendment does not give inmates a cause of action for incorrect interpretations of state

law.

      Finally, Wanamaker's state law claim for false imprisonment against the individual defendants is barred by their immunity under 1 Pa.C.S.§ 2310: Commonwealth officials and employees acting within the scope of their duties are immune from lawsuits except in the ten categories of claims specified in 42 Pa.C.S.§ 8522(b). *See* Schutzeus v. Pennsylvania Bd. of Prob. & Parole, No. 20-2031, 2022 WL 58541, at *4 (3d Cir. Jan. 6, 2022). False imprisonment is not excepted from immunity.

      The defendants' motion to dismiss for failure to state a claim, ECF no. 43, is granted.

      The Clerk shall mark this matter closed.


DATE:  November 2, 2022

                                 Keith A. Pesto,
                                 United States Magistrate Judge

Notice by ECF to counsel of record